# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

DONALD ROBIN BARREN,

    Plaintiff,

vs.

PHILIP J. KOHN et al.,

    Defendants.

2:13-cv-01492-RCJ-GWF

**ORDER**

This is a prisoner civil rights case. Pending before the Court is a motion to dismiss or for summary judgment.

**I.    FACTS AND PROCEDURAL HISTORY**

Plaintiff Donald R. Barren is a prisoner in the custody of the Nevada Department of Corrections ("NDOC"). He sued Defendants in this Court under 42 U.S.C. § 1983 for violations of his civil rights. The Complaint listed ten causes of action. The Court dismissed the Complaint upon screening under 28 U.S.C. § 1915A. The Court of Appeals affirmed as to Counts I through VIII but reversed in part as to Counts IX and X, ruling that Plaintiff should have been given leave to amend those claims. Upon remand, Plaintiff filed the Amended Complaint ("AC"), listing Counts IX and X from the Complaint as Counts I and II of the AC, and moved for offensive summary judgment. The Court denied the motion and dismissed the

AC, with leave to amend, because Plaintiff had prayed only for relief that was not available. Plaintiff has filed the Second Amended Complaint ("SAC"), and Defendants have asked the Court to dismiss it for failure to state a claim or to grant them defensive summary judgment.

## II. LEGAL STANDARDS

### A. Dismissal for Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556)

("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). That is, under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), he must also allege the facts of his case so that the court can determine whether he has any basis for relief under the legal theory he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review). Put differently, *Conley* only required a plaintiff to identify a major premise (a legal theory) and conclude liability therefrom, but *Twombly-Iqbal* requires a plaintiff additionally to allege minor premises (facts of the plaintiff's case) such that the syllogism showing liability is complete and that liability necessarily, not only possibly, follows (assuming the allegations of fact are true).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

### B. Summary Judgment

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). If the moving party meets its initial burden, the burden then shifts to the nonmoving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a

factual dispute, the nonmoving party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the nonmoving party must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmoving party is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the nonmoving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

///

///

///

## III. ANALYSIS

### A. Count I

The Court dismisses Count I. Plaintiff does not allege having lost a non-frivolous claim, *see Lewis v. Casey*, 518 U.S. 343, 351–53 (1996), due to Defendant's alleged hindrance of his ability to access the law library, (*see* Second Am. Compl. ¶¶ 4–4D, ECF No. 29). He alleges that the limited access hindered his ability to appeal Judge Hunt's denial of his habeas corpus petition, i.e., he was unable to file a timely notice of appeal, but he does not and cannot allege that an appeal would have been non-frivolous. Judge Hunt denied Plaintiff a certificate of appealability because "no reasonable jurist could conclude that the Court's order denying the petition was in error." In other words, an appeal would have been frivolous. *See Gonzalez v. Thaler*, 565 U.S. 134, 145 (2012). The Court of Appeals dismissed the appeal for untimeliness without ruling on appealability, finding that Judge Hunt had not abused his discretion in finding no good cause to extend the time to appeal. The Court cannot undermine Judge Hunt's undisturbed ruling that the habeas corpus claims were frivolous.

### B. Count II

In Count II, Plaintiff alleges that certain Defendants violated his First Amendment rights by rehousing him several times between June and September of 2011 in retaliation for pursuing his habeas corpus action and/or complaining about a lack of law library access. Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government for redress of grievances may support a claim under § 1983. *Rizzo v. Dawson*, 778 F.2d 527, 531–32 (9th Cir. 1985). Prisoners have a First Amendment right to file prison grievances and pursue litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). "And because *purely* retaliatory actions taken against a prisoner for having exercised those rights

necessarily undermine those protections, such actions violate the Constitution . . . ." *Id.* (emphasis added). To state a First Amendment retaliation claim, a prisoner plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* at 567–68. To establish a prima facie case, a plaintiff must show not only that a defendant retaliated against him for his protected activity but also that the defendant's actions did not serve any legitimate penological goal, such as preserving institutional order and discipline. *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (citing *Rizzo*, 778 F.2d at 532). A plaintiff asserting a retaliation claim must demonstrate a "but-for" causal nexus between the alleged retaliation and the protected activity. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84 (1977)).

The timing of events surrounding alleged retaliation may constitute circumstantial evidence of retaliatory intent. *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989). Where a causal nexus is to be inferred purely from the temporal proximity between a protected activity and an adverse action, however, a plaintiff must show a "very close" temporal proximity. *Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 802 (9th Cir. 2003) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (citing cases holding that three- or four-month time lapses are insufficient)); *see also Curley v. City of N. Las Vegas*, 772 F.3d 629, 634 (9th Cir. 2014). The Courts of Appeals have come to similar conclusions as to time limits, although some circuits employ stricter standards than others. *See Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 331 (3rd Cir. 2015) (holding that three months was insufficient under the Third Circuit's "unusually suggestive" standard); *Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007)

(collecting cases variously holding that as much as three months' delay can be sufficient but as little as two months can be insufficient); *Kidwell v. Eisenhauer*, 679 F.3d 957, 966–67 (7th Cir. 2012) (noting that in the Seventh Circuit, the lapse may typically be "no more than a few days"); *Manatt*, 339 F.3d at 802 (nine months insufficient); *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (11th Cir. 2002) (thirteen days "sufficient, but barely so").

The surrounding circumstances of a complaint are important, e.g., where a significant intervening event occurs relevant to the adverse action that is alleged to be retaliatory or where adverse action or progressive discipline was already in motion when the protected activity occurred. *See, e.g.*, *Burkybile v. Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 314 (2d Cir. 2005); *Kidwell*, 679 F.3d at 967. This will typically be a prevalent aspect of a retaliation analysis in the prison context, because prisoners often file steady streams of grievances and lawsuits against defendants, who in turn often impose steady streams of adverse actions against prisoners for legitimate penological reasons. The most litigious prisoners can also be some of the most penologically intransigent, so the task of sorting out retaliatory motives from legitimate ones in the face of multiple grievances, lawsuits, and disciplinary actions can be complex in some cases. Nevertheless, the factual complexity of such an analysis does not alter the legal standard. The burden of proof remains on the prisoner–plaintiff to show a causal nexus between a particular protected activity and a particular adverse action that is unrelated to legitimate penological goals.

In light of these standards, the Court grants summary judgment against Count II. There is no constitutional right to be housed at any particular classification level. *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)). The right against retaliation for protected First Amendment activity is freestanding, however, so the

question is simply whether the moves were made as pure retaliation for Plaintiff's protected activity, chilled Plaintiff's exercise of his rights (or would have chilled a prisoner of ordinary firmness), and served no legitimate correctional goal. Most importantly here, Defendants have pointed out that Plaintiff has produced no evidence of a causal nexus to show retaliation, and Plaintiff has produced no evidence in opposition that would permit a jury to find one. There is no evidence of any comment having been made by any Defendant from which a retaliatory motive could be inferred. And the history of moves both at HDSP and SDCC show that housing moves occurred not only during the relevant time frame but also before and after.[1]

If Plaintiff means to allege that his complaints about lack of law library access is what caused Defendants to retaliate with the housing moves, the available evidence is all to the contrary. The attached grievances concerning lack of law library access are dated from late 2012 to early 2013, long after the alleged retaliatory housing moves occurred in mid-2011. The grievances complain that Plaintiff lost law library access as a result of his housing moves, not that he was moved for complaining about a lack of law library access.

If Plaintiff means to allege that his habeas corpus action motivated the housing moves, he has not shown any genuine issue of a causal nexus. His Petition was filed in mid-2009, and the case proceeded through mid-2013. (*See* Pet., ECF No. 3 in Case No. 2:09-cv-1202; Mandate, ECF No. 86 in Case No. 2:09-cv-1202). A series of housing moves in mid-2011 is not enough to

---

1 On June 17, 2011, Plaintiff was moved from Unit 12 to Unit 10 at High Desert State Prison ("HDSP"). (Offender Movement History Report, ECF No. 49, at 138). On August 26, 2011, Plaintiff was moved to a different bed within Unit 10. (*Id.*). On September 8, 2011, Plaintiff was moved to Unit 9. (*Id.*). On September 15, 2011, Plaintiff was moved to Unit 11. (*Id.*). On September 28, 2011, Plaintiff was moved to Unit 9. (*Id.*). The Offender Movement History Report indicates that this time period was not atypical with respect to the frequency of moves, either at HDSP or other prisons within NDOC. Plaintiff was moved six more times within HDSP before being transferred to Southern Desert Correctional Center ("SDCC") in December 2012. He was moved eleven times at SDCC between December 2012 and October 2015. (*Id.*).

infer a causal nexus based on a habeas corpus action that ran from mid-2009 to mid-2013. The time lapse from filing to the alleged retaliation was nearly two years, which is far too attenuated to infer a causal nexus based on temporal proximity alone. Nor does the docket reveal any notable activity in the weeks or months immediately preceding the mid-2011 housing moves, e.g., such as a motion for sanctions or some other action in the case by Plaintiff that might have upset Defendants beyond the fact of the maintenance of the action since 2009. (*See* Docket in Case No. 2:09-cv-1202).

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss or for Summary Judgment (ECF No. 48) is GRANTED. Count I is dismissed, and Defendants are entitled to summary judgment against Count II.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS SO ORDERED.

DATED: This 24th day of May, 2017.

_____
ROBERT C. JONES
United States District Judge